May it please the Court, Your Honour, I am Monica Mansouri. Keep your voice up. May it please the Court, I am Monica Mansouri for the petitioner. If I may, Your Honour, start with a brief background regarding the petitioner. The petitioner is a filmmaker, journalist, philanthropist, born in Iran. At the age of four, she and her family, her parents at the time were journalists for the national Iranian television. Moved to the United Kingdom for a brief, to be working for the BBC there in London. After their program was over, they returned to Iran. That was at the beginning of the revolution in Iran because they were journalists for the former regime. They were persecuted and returned to London in 1979 and received asylum there. Her family worked for the BBC at the time. Then later on, because of death threats, stopped their work. Currently, they are in the United States as United States citizens, working as federal employees in Washington, D.C. Her parents? These are her parents, Your Honour. Her citizens, or U.S. citizens? U.S. citizens. She's a citizen of Great Britain? She's a citizen of Great Britain, Your Honour, yes. There is an I-130 approved from her mother to Ms. Sadefi currently. Currently, though, her parents are correspondents for the Voice of America and Radio Free Europe. These are the only Farsi-speaking official networks of the U.S. government broadcasting to Iran and the Middle East, representing the U.S. foreign policy. Ms. Sadefi herself, Your Honour, as you know, is an award-winning filmmaker. Her film, I Am Nada, is a human rights story about the true story of the innocent young woman who was shot and killed during the Islamic regime 2009 demonstrations against the regime. So she applied for asylum here? She applied for asylum, Your Honour, and she was denied asylum because the judge found that there was no past prosecution, simply because he, in fact, he belittled her recognition and notoriety, even though there was voluminous records, information provided to the court about her articles, her political activism, her work as a political activist. Well, but didn't he, he found that she didn't suffer past persecution in, I guess, in England? That's right. He found that she didn't suffer past persecution because he belittled her work as someone who was simply a marketing or somebody with a theatre background. He's not taken to consideration. But he said a lot of nice things about her, too. I'm sorry, Your Honour? He said nice things about her, as well. He enjoyed her conversations in the court.  He enjoyed reading all the articles. Well, at the end, he said something about, you know, something about, I hope there's a way or maybe there's a way, another way you could get relief here to remain in the United States. Yes, that's exactly what he said. At the end of the hearing. At the very end of the hearing. Well, he denied asylum. That is what he said. The point is that he didn't take all of her work as a showing of her recognition and her notoriety. The BIA, in a footnote, agreed with the petitioner in saying that the work that she had done, that she did receive some recognition and notoriety. So the petitioner's argument is that the BIA abuses discretion in not reevaluating the case based on her notoriety and her recognition. And they didn't take into consideration the new evidence that was provided in the motion. In 2013, Your Honour, we provided information about a British soldier who was slayed in London in broad daylight by Islamic terrorists. Wait, wait, wait. So as I understand, you appealed to the BIA? Yes, Your Honour. Correct. And the BIA affirmed? They did. What the IJ did. The BIA affirmed, reiterated word for word. And you filed a motion for reconsideration, correct? Yes, Your Honour. A motion to reconsider and reopen the case. Well, I thought it was just a motion to reconsider. And then the BIA, based on the evidence that we provided, took it upon themselves to consider both a reconsideration and reopen. Did she file a declaration? Did you ask them to treat it as a motion to reopen? I thought you just filed a motion to reconsider. We did, Your Honour. But we did provide in there new evidence, which was. . . But you didn't ask for a motion to reopen. We didn't, no, Your Honour. We called it a motion to reconsider. We're coming to a crucial path. Okay. Yes, Your Honour. So the BIA did consider it as a motion to reopen and reconsider because of the new evidence that was provided. And the new evidence was material and unavailable at the time of the hearing. The new evidence showed that. . . Let me ask you this. Let me just change. . . You know, the IJ asked or made a comment that, you know, she was credible and believable and whatnot and that it would be great if there were some other alternative for her. Did you ever pursue with. . . Yes, Your Honour. With the other side some other alternative? Is there any way in which there might be a basis for the government to, what is it called, to engage in some prosecutorial discretion and give her some status pending the disposition of her I-130? That would be great, Your Honour. We did request. . . But did you ask them? We did request for deferred action about two years ago, and the government did not agree. They denied the deferred action. But how about recently? Recently, Your Honour, we asked the government if they would agree to hold this case in abeyance so that we could file an I-601A waiver as well as a 212 waiver to process her I-130. The response was that you could do that at the same time as this case is pending, so that's what we'll be doing soon. I just missed the last sentence. The government said that we should file the 601A waiver and the 212 at the same time as this case is pending, so that is the next step that we will be taking while this case is still pending. We will be filing a 601A waiver as well as a 212 waiver. What is a 601 waiver? It's a waiver for unlawful presence, Your Honour. It's available to the petitioner, and most recently, since the expansion of the rules, because she had a removal order, we are able to now file a 212 waiver, Your Honour, which will allow, if granted, if both are granted, it will allow her to adjust her status. And if I may, Your Honour, reserve two minutes. Okay, that's fine. Let's hear from the government and see what they have to say. Thank you. May it please the Court, my name is Andrew O'Malley. We like your smile, so you're happy. Yes, Your Honour. My name is Andrew O'Malley. I represent the Attorney General of the United States. This Court should deny the petition for review because the Board acted within its discretion by denying petitioners' motion to reconsider and motion to reopen. I'd like to emphasize at the outset that that is all that we're addressing here. The underlying merits of the immigration judge's decision and the Board's decision are not before the Supreme Court. So let me ask you this. Yes, Your Honour. You're right. So what's here is a motion, what she filed was a motion to reconsider. That's correct, Your Honour. And it's very short. It is, Your Honour, very short. It's like one, two, three, four paragraphs. There's really two operative sentences in there. One is for the reconsideration and one which the Board consider a motion to reopen because it called out to new evidence, essentially. It says in the last paragraph, it says, the respondent requests that this Court reconsider its decision based on the record produced at the hearing as well as the new events. She has to successfully or to succeed on a motion to reconsider, she has to point out an error of fact or law in the Board's prior decision. That's the purpose of the motion to reconsider.  to start to treat it as a motion to reopen. She didn't make a motion to reopen. She didn't, Your Honour, but her... What did you say? She didn't specifically... She did not. She didn't specify that it was a motion to reopen. Don't say didn't, did not. Sorry, Your Honour. Okay. She specified that she was relying on new evidence. There's no function in the motion to reconsider to consider new evidence. That's a motion to reopen. It's pretty standard for the Board to consider a motion to consider new evidence, a motion to reopen. The new evidence was an opinion of a constable. No, Your Honour. That was evidence that was presented. That's something that she suggested that the Board and the immigration judge did not consider below. That was something that they did consider. That's part of her request for reconsideration. She suggested that it was error for the Board and the immigration judge not to consider that she was threatened in the U.K. and that a constable said you'll be safer in the United States. That all played into the Board's decision below. That was part of the agency's decision below. So that's reconsideration. That's reconsideration. Let me ask you this. So when I downloaded the motion to reconsider... That's not a motion to reopen. No, Your Honour. That's reconsider. There's nothing attached to it. That's correct, Your Honour. So in a motion to reopen under the regs, the petitioner or the movant is supposed to provide the evidence, a declaration or something to show that they would be entitled to relief. And the Board plainly recognized that here and said you didn't attach any evidence. So why would they treat it as a motion to reopen? I think it was a benefit to the petitioner to say, look, we understand what you're trying to do here. You're trying to get us to consider this new evidence and see how it affects your case. That's really a motion to reopen. Let's take a look at it. He didn't ask for it. He just jumped on it. And there's a big difference between the two. Well, they could have just said you asked us to reconsider. This is not the function of a motion to reconsider. Your motion is denied. Yeah, they could have. What would have happened then? Could she have filed a motion to reopen? No. After that? Mm-hmm. After 30 days, yes. With a properly documented and declarations and everything. But she lost that because you only get one crack at a motion to reopen. You do, Your Honor. There is the opportunity, of course, for the BIA to reopen Sue Esponte if there was a problem with that. But, yes, she gets one crack at reopening. She hasn't filed another motion to reopen. She certainly hasn't suggested that this is a problem in her case. It's something that she's waived if it is a problem in her case. No, but we look at these things, too. I understand, Your Honor. We're pretty careful. I think if you take a look at matter of Colho, which is a standard sort of basis for reopening or the board's approach to reopening, the consideration of new evidence as a motion to reopen is standard. And that is what she was trying to do, was have the board reopen her decision in this case. Just because she didn't specify it that way, that is what she was trying to do. That's the function of a motion to reopen. And the board acted within its discretion by determining that reopening was not warranted based on the evidence that she was suggesting affected her proceedings. Well, I think it took advantage of her. I think it was to her benefit, Your Honor. No, it wasn't to her benefit. Well, she certainly hasn't suggested this is a problem in her case at any point. Let me ask you this. What's your response to what the I.J. said at the end of the hearing? Isn't there some way, some possibility of prosecutorial discretion that would allow her to remain in the United States? Even if she has an I-135 pending, the number needs to come up. That's correct. It's probably years away. I don't know what the number is for citizens of the U.K. or what the basis is. I'd start by saying that, as you know, prosecutorial discretion is outside the scope of this court's jurisdiction. Well, we understand that. I know you do. But, like, you know, you guys oftentimes say, you know, let's talk. Absolutely. I just want to note it for the record that that's our position. And my understanding, I wasn't the attorney who briefed this case. I know that's not an excuse here, but I know that opposing counsel spoke with my colleague about prosecutorial discretion. ICE declined. I know that Petitioner's Counsel has suggested that she might pursue a 601A waiver, as she did here. She hasn't done or suggested that she's done any of the applications for those waivers. It really has no bearing on this proceeding. This court can make its decision on the motion to reopen and reconsider, and it has no effect on her ability to go to DHS, ask for waivers, and ask to be admitted on that basis. She can certainly go and do that. But, again, the sole question before this court is whether the Board abused its discretion in denying the motion here, and they clearly didn't. Her motion to reconsider was perfunctory. The agency considered the arguments that she suggested that it didn't, and they played into the agency's analysis. And the new evidence that she submitted, which was just a reference to the British soldier who was killed in 2013, I believe, was not a similarly situated individual, and it wouldn't affect the outcome of her proceedings. And, again, she hasn't suggested in any context that that was an incorrect decision by the Board. How long has she been here? I think since 2005, although she had come a couple times before that. Is that right? Yes. That's correct. So how many years has she been here now? That would be 12 years. Did she come here as a youngster early on? She came here after university, correct? She was in her early 20s, right? Mid-20s. Mid-20s, I think, at least when the proceedings were going on. And that's one of the wrinkles in this case, too, is that she came as a visa waiver applicant. So her order of removal stems from DHS, and she's specifically in asylum-only proceedings, so the Board here is not considering removability. The Board was simply considering whether or not she was eligible for relief. So she'd have to go to DHS to seek to have that removal order rescinded. Well, we could find that the BIA abused its discretion when it construed the motion she filed as a motion to reopen. Your Honor, I think, again, first, she's never raised that. She's certainly waived the motion. So what? If you look at the Board's precedents, it's a matter of coho, that is standard for the Board. When you submit new evidence, that is considered a motion to reopen. But she didn't submit any new evidence. She didn't submit anything. Not even a declaration. She was trying to, Your Honor. Trying to. Trying to and actually doing it. We're trying to get you to do something that's decent, too. Yes, Your Honor. We're not succeeding. Understood, Your Honor. But certainly she was trying to submit new evidence. She didn't submit it. The Board gave her the benefit of the doubt there and said, look, we understand what you're saying here. It's simply not the basis for reopening. She lost that motion to reopen. I mean, she lost it, but she lost it. You only get one. Well, she hasn't filed another one. If she wants to file one of those and have it denied, then she can go. She hasn't thought about it. But she can have it denied and then challenge that decision that that was a problem. But she hasn't done that. And she hasn't suggested that it's a problem in these proceedings. There are no further questions, Your Honor. So would you have a mediation office? Would that be a possibility? You know, I don't see what good mediation would do in this case. She can go into DHS. She's going to have to go to DHS and take care of these things herself. There's no state of removal here. This court denied her motion for state of removal. She hasn't been removed to England. She has not. She has not. And she can go to DHS and ask them to not remove her while they consider her applications. There's just nothing for the mediation office to do here. All right. Thank you, Your Honor. All right. Do you understand what we're talking about? I do, Your Honor. Okay. The petitioner argues that the BIA did abuse its discretion in not taking into consideration the evidence provided. The evidence provided of the British soldier was a similarly situated individual. Look, there's no evidence.  There's the evidence in the record that was before the IJ. Right. The administrative hearing. That evidence, right? But attached to this motion, there is no evidence. There's no declaration. There's no additional evidence. Correct, Your Honor. There's reference made to the British soldier who was slain, and the BIA considered that and made a footnote of it in their decision. And that case is of a similarly situated individual like the petitioner. And, in fact, some of the BIA's errors were not taking into consideration the expert opinion that said that the U.K. government was unable to protect her, not taking into consideration the case law that said that threats were enough to show past persecution, and comparing her to the case of Narvani, which is not similar since she has a lot of notoriety compared to Narvani, who was a simple individual in Germany. So the BIA did abuse its discretion, and we would request that if the mediation is possible, that we should go to mediation. If it's not possible, that this court should hold the case in abeyance until we file the waivers with the DHS or to find another resolution to this case, because as you referred, Your Honor, the immigration judge wanted her to find another way of relief. And the case of Al-Harbi, which is a 9th Circuit 2001 case, Your Honor, says that she only needs to show a reasonable likelihood that she faces 1 in 10 chance of persecution, and I think she's been able to show that, Your Honor. Okay. Thank you. Thank you. The matter is submitted.
judges: Pregerson, Noonan, Paez